Per Curiam.
 

 The bill states, that a warrant issued to A. Butts for 1,000 acres for his services in the Revolutionary War; that he sold the warrant to Thomas Tilluch, of Halifax, in North Carolina, for a full and valuable consideration, which was actually paid; that the warrant was transferred, not by indorsement on the warrant, but on a separate paper, which is now lost; that Butts caused to be delivered to said Tilluch, who procured an entry to be made thereon by A. Crutcher and James C. Montflorence, or one of them, on the 24th of July, 1784, on which a survey was made, and a grant issued in 1786, in the name of A. Butts; it was for the use of Tilluch. The tract was 1,000 acres, on Red River, Montgomery County.
 

 The bill states, that Thomas Tilluch died in 1785, and by his last will and testament he directed his lands to be sold and disposed of by his executors, who never did in any manner dispose of these lands ; that T. Y. Tilluch was his only heir, who died intestate the 23d of August, 1805, under 24 years of age, and that the plaintiffs are his heirs at law.
 

 The bill charges, that Robert Nelson, now deceased, after the date of the grant, made several entries of the same land, although he well knew at the time, and ever afterwards, that the lands thus entered were claimed * by, and actually did belong to the heirs of Tilluch; that grants issued to Nelson upon these entries, and that he brought an ejectment against T. Dunbar, and
 
 *495
 
 obtained judgment; and in consequence thereof,in the year 1792, entered into possession of all the land comprised in the grant in the name of Butts during the infancy of Tilluch. And being thus in possession in the years 1801, 1802, 1803, failed to return the land for taxation, or pay the tax due thereon for the year 1802 ; by reason of which failure the sheriff or collector reported to court, in 1808, that the taxes were still due and unpaid, whereupon the court gave judgment for the sale of the land for the taxes against A. Butts, who was then dead, and that Robert Nelson became the purchaser for $9.40 and obtained the sheriff’s deed. The complainants say that Nelson himself was the only person who owed these taxes, and ought to have paid them, and not Butts, or those claiming under him ; and that the omission of Nelson to pay the taxes was designed and intended for the fraudulent purpose of extinguishing the opposing claims, and profiting at the expense of Tilluch’s heirs.
 

 It is also charged in the bill, that in the year 1799, an . action of ejectment, for recovering possession of said land, was commenced against Robert Nelson, and others holding claims under him, by Den, plaintiff, on the demise of A. Butts, but really for the use of the heirs of Tilluch, in which action the plaintiff was nonsuited in 1801, and judgment was entered up against the plaintiff for the costs. In 1804, Nelson, without any
 
 sei.fa.
 
 or other process, procured an execution to issue for the costs against Butts or his heirs, and caused it to be levied on said lands, and purchased them at the sheriff’s sale on the 24th of October following for $5, and obtained a deed from the sheriff; the land being then in his possession, or of those claiming under him, adversely to all others, and was designed by * covin and fraud to extinguish the claims of Tilluch’s heirs.
 

 It is also charged that the present defendants, and all others who have sold or conveyed to them, or under whom they respectively claim, well knew of the equitable claim now set up by the complainants, at and before the sales and conveyances by them and to them respectively made, and at and before the purchase money by them or to them respectively paid, and are subject to all the equity to which Nelson was subject, and ought to give up possession of the lands and account for the yearly profits; and the bill prays for general relief.
 

 Travis disclaims; the other defendants filed separate answers.
 
 *496
 
 They admit the warrant, the entry, and the grant to Butts, and the grants to Nelson for the same lands, and the taking of possession by him in the year 1792; that he was possessed in 1801, 1802, and 1808 ; that he purchased the same for taxes, and also under the execution for the costs of the ejectment; but deny any notice of the sale of the warrant by Butts to Tilluch, or of any matter relating to any equitable claim or interest charged in the bill; they deny any knowledge of the suit brought by Nelson against Dunbar; they have no knowledge, they say, of the proceedings in court respecting the judgment for taxes, or how the execution for costs of the ejectment was procured, or whether the proceedings in either case were regular or not; they deny notice of any covin or fraudulent conduct in Nelson respecting any of these ti’ansactions, and require in all these points full proof.
 

 They severally state that they are in possession of lands within the bounds of the tract granted to Butts, each specifying tbe particular quantity he holds, and most of them the price paid, and that they hold by deeds immediately from Nelson, or mediately under titles derived from him. They aver that they were * purchasers for a full and valuable consideration, without any notice or knowledge of any claim which T. Tilluch had, and never heard of any such claim at or before the execution of the deeds of conveyance; and that Nelson and those under whom they purchased were in quiet and peaceable possession of the laird, and have been so ever since the years 1797 or 1798. Having thus been in actual possession more than seven years under deeds of conveyance founded on a grant, they severally claim the benefit of the act of limitation passed in the years 1715 and 1797. It is proved that T. V. Tilluch was the only son and heir of T. Tilluch; the said T. V. Tilluch was born 21st October, 1782, and died the 21st of August, 1805, in the 23d year of his age ; and that the complainants are his heirs, all of whom were infants under the age of 21 years, till shortly before the commencement of this suit.
 

 One question for our decision is, whether the
 
 cestui que trust
 
 of Butts can be excused under the act of limitations for not suing within the prescribed time, because of his estate being equitable, not legal. He has not sued in time either Nelson or his sub-purchasers. And we are of opinion that the act will not run between
 
 cestui que trust
 
 and his trustee, but that it will run as between the
 
 *497
 
 trustee and a stranger. The excuse is founded on a sameness of interest that by no means exists between the two last-mentioned persons. It is also founded upon the impossibility the
 
 cestui que trust
 
 labors under of bringing an action at law, a consideration wholly inapplicable to the trustee.
 

 Another question is, whether he who is in possession under a claim originally bad (for instance, under a void tax sale, and deed in pursuance of it) can be profited by seven years’ possession, if there be not a regular chain of conveyances between him and the grantee. (And by Haywood and Whyte, Judges, to which RoANE, Judge, did not express his dissent.)
 
 “Founded upon a grant
 
 ” means as it is understood in common acceptation, and in * the acts allowing for improvements. He who has a deed, devise, descent, or other supposed title, which can be supported, if at all, only by a second grant or other inferior title, which he must use for defense of his claim that is no other wise supported,.,, and not by any other grant, is, in the contemplation of this law,, held under a deed founded upon a grant. His deed or supposed! title is as good as one regularly derived from the second grant, for-both are bad. It is equally protected by the policy and spirit of the-act of limitations. For instance, if the second grantee die leaving; two sons, one born before marriage, the other after, and the elder is - supposed to be the heir, and as such conveys, and, after seven years,» his grantee is sued by the second son ; this grantee shall be protected as well where, having purchased from the second son, and ¡ been in possession seven years, he is sued by the first grantee of the-State. And as to the question, what is color of title, a deed from i one apparently an owner is a color of title, because it is a conveyance having the form and appearance of a valid legal conveyance,, though it is not so in reality. So of a devise, descent, or the like,. from an apparent owner. But a bond or covenant for title to be - made at a future day is not a color of
 
 title;
 
 for, upon the face of it,. there is a disaffirmance of a title now existing in the obligee or covenantee. A bond for title does not purport to be a conveyance. It depends upon the title of the obligor, and relates to it. The possession of the obligee is for the obligor, and, in the act of limitations, is counted for the latter.
 

 There are divers other questions arising, but, indeed, we think it; unnecessary to enter upon the discussion of them at this time; for'
 
 *498
 
 there is a point in this case on which the cause must turn and be decided, let those questions be decided either one way or the other. Notice in this case must be brought to the defendants; otherwise, although Nelson may have been subject to the equity of the complainants, the * defendants are not. The evidence upon this point is, that, a few days before the commencement of this suit in equity, all of the defendants but Hatcher said to the witness that they respectively had heard
 
 of Butts's
 
 claim,
 
 or of some person claiming under him.
 
 Seawell, for the heir of Tilluch, had brought an action of ejectment in the name of Butts about the year 1799, which, some years afterwards, went off by a nonsuit; that an arbitration between A. Crutcher and Peterson, respecting part of the 1,000 acres, was settled by twelve men upon the bond in the year 1788; that Nelson was one of the twelve, and the surveyor «employed to show the interference ; that the claim of Tilluch became known generally in the neighborhood in the year 1796 or 1797. It is urged, that, hearing of Butts’s claim, the purchasers should have inquired into it, and might have collected, from the •above named persons and circumstances, that the equitable claim of 'Tilluch existed.
 

 Notices are of two sorts, express or notional. The latter is where the purchaser knows of a deed, which refers to another deed, which discloses the equity. But if he knows of a deed or grant which gi.ves an estate that is subject to a trust, notice of that deed or grant is mot notice of the trust, if it do not appear on the face of the deed or grant; because, perusing the latter, it would not inform him of, the trust. So, if he has heard of the claim of a grantee, that is
 
 not
 
 notice .of the trust dependent upon the claim, for he may know of the latter without knowing of the former.
 

 Greneral notice in the neighborhood
 
 of the claim of an equity
 
 by an
 
 agent, is not notice to those who purchase lands in that neighborhood, for still they may not have heard of it. Admission of the plaintiff’s equity by him who conveyed may prove against them the existence of the equity, but not the notice of it. If the sub-purchasers obtained conveyances before the admission made, they are not affected by them. * 2 Fonb. 155,156. If the purchaser is told that certain persons are in possession, he has in law notice of their estates. Newland, 571. If a purchaser hath possession of a settlement, he is presumed conusant of a fact,
 
 *499
 
 relative to the settlement, which is not stated in¡ it, because, by inquiry of the wife’s relations, he might have known it. New. 512. Here the purchasers knew of Butts’s estate or of some claim under it, but
 
 that
 
 did not point out to them the sub-claimant to inquire of.
 

 It is going very far to say we will take away a man’s legal estate upon a presumed notice which may never have come to him. It will not do to extend that presumption beyond the bounds it has hitherto been confined in. Indeed, its dangerous nature may render it a fit subject of inquiry whether these bounds ought not to be reduced to narrower limits.
 

 This evidence has probably been lost by the death of Taylor, but it is indispensable to the support of this bill. An honest claim may probably be lost by holding the evidence given to be incompetent to the establishment of the fact it is produced for. But it is better that one individual suffer than that the hest interests of society should be jeopardized by the acceptance of testimony and holding it sufficient, when in itself it is uncertain, and leaves it
 
 in equilibrio
 
 whether the fact existed or not.
 
 The bill must be dismissed.
 

 See, as to
 
 color of
 
 title,
 
 Wilson
 
 v. Kilcannon, 4 Hay. 182, and note
 
 sub fin.
 
 As to
 
 limitation as to
 
 trusts,
 
 Coleson
 
 v. Blanton, 3 Hay. 152, and note
 
 sub fin.
 
 See King’s Digest, 3175, 8353, 8483, 9723.